**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**


| | | |
|---|---|---|
| SAMUEL BAILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10CV110 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |


## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Samuel Bailey, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Defendant, the Commissioner of Social Security, denying his claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). Plaintiff has filed a motion for summary judgment (Docket Entry 6) and Defendant has filed a motion for judgment on the pleadings (Docket Entry 11). The Court has before it the certified administrative record. For reasons discussed below, it is recommended that the Commissioner's decision be affirmed, that Plaintiff's motion for summary judgment be denied, and that Defendant's motion for judgment on the pleadings be granted.

## PROCEDURAL HISTORY

Plaintiff applied for DIB on May 30, 2008, alleging a disability onset date of February 15, 2006. (Tr. 110-113.)[1] His application was denied initially and upon reconsideration. (Tr. 75-78, 80, 81.) Thereafter, Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. 82-83.) Plaintiff, his attorney, and a vocational expert ("VE") appeared at

---

[1] Transcript citations refer to the administrative record.

the hearing on June 12, 2009. (Tr. 32.) A decision was issued on July 23, 2009, upholding the denial of Mr. Bailey's application for DIB. (Tr. 17-31.) On December 9, 2009, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's determination the Defendant's final decision for purposes of judicial review. (Tr. 1-4.)

In rendering his disability determination, the ALJ made the following findings later adopted by the Defendant:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since February 25, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*).

    . . . .

3. The claimant has the following severe impairments: Degenerative disc disease of cervical spine, left knee impairment, asthma, depression and anxiety disorders (20 CFR 404.1520(c)).

    . . . .

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

    . . . .

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to engage in light work as defined in 20 CFR 404.1567(b) except he is limited to frequent not constant pushing and pulling of the left lower extremity; limited to frequent not constant pushing/pulling of left upper extremity; limited to no more than occasional climbing, balancing, crouching, stooping, kneeling, and crawling; limited to no concentrated exposure to hazards such as moving machinery, unprotected heights or dust, fumes, or gases; limited to unskilled work performed in a non-production environment in a job with limited interpersonal demands.

(Tr. 19-23.)

In light of the above findings regarding residual functional capacity ("RFC"), the ALJ determined that Plaintiff was unable to perform his past relevant work. (Tr. 29.) The ALJ also found that Plaintiff, who was 39 years old at the time of the decision, met the definition of "a younger individual age 18-49." (Tr. 30) (citing 20 C.F.R. § 404.1563). Finally, the ALJ noted that transferability of job skills was not an issue in the case, and added that Plaintiff has at least a high school education and can communicate in English. (*Id.*) Based on these factors, Plaintiff's RFC, and the VE's testimony, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* (citing 20 C.F.R. §§ 404.1569 and 404.1569a).) Accordingly, the ALJ decided that Plaintiff was not under a "disability," as defined in the Act, from his alleged onset date through the date of the decision. (Tr. 31.)

## DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of review of [such an administrative] decision . . . is extremely limited." *Frady v. Harris*, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hines*, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1993)

(quoting *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." *Hunter*, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." *Mastro*, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." *Id*. at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

In confronting the issue so framed, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" *Id*. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has

_____

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while

-4-

. . . detailed regulations incorporating long-standing medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." *Id*. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." *Id*. (internal citations omitted).

This process has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." *Albright v. Commissioner of the Social Security Admin.*, 174 F.3d 473, 475 n.2 (1999).[3] A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." *Bennett v. Sullivan*, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." *Mastro*, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." *Id*. at 179.[4] Step four then requires the ALJ to assess whether, based on that

employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." *Craig*, 76 F.3d at 589 n.1 (internal citations omitted).
[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." *Hunter*, 993 F.2d at 35 (internal citations omitted).
[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." *Hines*, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do

RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. *Id*. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall*, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. *Hines*, 453 F.3d at 567.[5]

### Assignments of Error

In the present case, the ALJ found that Plaintiff met his burden at step one of the sequential evaluation process ("SEP").[6] The ALJ concluded at step two of the SEP that Plaintiff suffered from the following severe impairments: degenerative disc disease of cervical spine, left knee impairment, asthma, depression, and anxiety disorders. Next, the ALJ determined at the third step that Plaintiff's impairments or combination of impairments did not qualify as a disability listing. In steps four and five, the ALJ found that Plaintiff's impairments excluded him

---

sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." *Hall*, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." *Hines*, 453 F.3d at 562-63.

[5] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the sequential nature of the five-step disability evaluation appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. *See, e.g., Hunter*, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

[6] Claimant was engaged in minimal work as a service member after the alleged disability onset date which was not tantamount to "substantial gainful activity." (*See* Tr. 19-20.)

-6-

from performing prior work; however, Plaintiff could perform other jobs available in the community and therefore, was not disabled.

Plaintiff first argues that the ALJ's determination of Plaintiff's credibility is not supported by substantial evidence. (Docket Entry 7 at 2-5.) Specifically, Plaintiff asserts that the ALJ rests his credibility determination primarily on Plaintiff's lack of knowledge of how his injuries occurred while in Iraq. (Docket Entry 7 at 3.) Next, Plaintiff contends that the ALJ failed to follow the applicable legal standard in 20 C.F.R. § 404.1529 in evaluating Plaintiff's symptoms, including pain. (Docket Entry 7 at 6.) Thirdly, Plaintiff argues that the ALJ failed to consider the disability findings of another government agency. (Docket Entry 7 at 14-16.) Plaintiff also contends that the ALJ failed to classify Plaintiff's obesity and sleep apnea as severe impairments. (Docket Entry 7 at 16.) Defendant contends that the evidence of record supports the ALJ's decision. (Docket Entry 12 at 3-5.) Lastly, Plaintiff claims that the ALJ erred in relying heavily upon the opinions of two non-examining physicians who concluded that there were light jobs available which Plaintiff could perform. (Docket Entry 7 at 18-20.)

## 1.    Determination of Plaintiff's Credibility

Plaintiff first claims that the ALJ's determination of Plaintiff's credibility was not supported by substantial evidence. He argues that "the ALJ finding concerning Mr. Bailey's lack of credibility stems primarily from Mr. Bailey's response to a single question posed at the hearing: how did he sustain his injuries in Iraq?" (Docket Entry 7 at 3 (citing Tr. 54).) Furthermore, Plaintiff argues that the ALJ failed to consider medical documentation present prior to his separation from the military (Docket Entry 7 at 4-5) and all other evidence of the record (Docket Entry 7 at 7-14) when assessing Plaintiff's credibility.[7]   The ALJ's conclusion is

_____

[7]   Plaintiff's makes separate, but similar credibility arguments. (*See* Docket Entry 7 at 2-5, 7-14.) Plaintiff's first argument essentially suggests that the ALJ decision was driven by one single question

supported by substantial evidence of record; therefore, Plaintiff's argument on this issue is without merit.

The Fourth Circuit Court of Appeals has adopted a two-step process by which the ALJ must weigh the credibility of a claimant's personal statements in the disability determination process. The first step requires the ALJ to determine if there is "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 594. The second step requires an evaluation of subjective evidence, considering claimant's "statements about the intensity, persistence, and limiting effects of [claimant's] symptoms." *Id.* at 595 (citing 20 C.F.R. §§ 416.929(c)(4) & 404.1529(c)(4).) "The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment." *Grubby v. Astrue*, No. 1:09CV364, 2010 WL 5553677, at *3 (W.D.N.C. Nov. 18, 2010) (citing *Craig*, 76 F.3d at 595; 20 C.F.R. § 404.1529(c)).) "Other evidence" refers to factors such as claimant's daily activities, duration and frequency of pain, treatment other than medication received for relief of symptoms, and any other measures used to relieve claimant's alleged pain. *Id.*

With regards to Step 1, the ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 25.) At step two, the ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the

---

unsupported by substantial evidence. (Docket Entry 7 at 2-5.) Likewise, Plaintiff's second credibility argument is that the ALJ failed to consider all evidence of the record in determining Plaintiff's credibility. (Docket Entry 7 at 7-14.) This argument contains numerous references to medical documents which Plaintiff believes the ALJ did not consider. Both arguments address the substance of C.F.R. § 404.1529(c); thus, the credibility arguments are discussed simultaneously.

above residual functional capacity assessment." (Tr. 25.) Contrary to Plaintiff's argument, the ALJ's conclusions about Plaintiff's credibility are not based solely upon the question presented above concerning Plaintiff's injuries in Iraq. The ALJ evaluated all factors in *Craig* to assess claimant's credibility, and there were inconsistences in Plaintiff's alleged symptoms throughout the record. Plaintiff testified that he was injured while on duty in Iraq, however Plaintiff provided no additional documentation that the injuries occurred as they were reported at the hearing. (Tr. 24.) After having a cervical fusion, Plaintiff stated that "he still experiences pain from the back of his neck down into his shoulder blades, and he cannot twist his neck like before." (Tr. 25.) However, treatment notes from Dr. Ranjan Roy, a treating physician, indicate that Plaintiff's "motor extremities was 5/5, the range of motion of the cervical spine was back to baseline…. on June 3, 2008, the claimant reported no neck or shoulder pain and that his arm pain had resolved." (Tr. 25.) The record also indicates that the ALJ considered Plaintiff's evaluations after carpal tunnel surgery and right knee arthroscopic surgery. (Tr. 26.) "While [Plaintiff] complained of weakness in his hand, the claimant reported that he was back to doing a lot of activities around the house." (Tr. 26.)

A review of the findings with regards to Plaintiff's mental health also supports the ALJ's conclusions about Plaintiff's credibility. Treatment notes from April and May 2009 indicate that "the claimant reported to his therapist that he had applied for and was accepted for six weeks of oil drilling training in Fort Hood, Texas." *Id*. An additional note confirmed that Plaintiff had begun a well drilling course and the ALJ concluded that "[t]his information is clearly inconsistent with the functional limitations as testified to by the claimant at the hearing." (Tr. 26-27.) The ALJ also considered medical documentation present prior to Plaintiff's separation

from the military. (Tr. 21.) The ALJ's findings also reflect all other evidence such as Plaintiff's daily activities. (Tr. 24.)

"Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976).) In making his credibility determinations, the ALJ in the present case assessed all evidence and noted specific inconsistencies with Plaintiff's testimony at the hearing and the medical evidence presented that warranted discrediting the Plaintiff's testimony. The ALJ's credibility determination is sufficient based upon the evidence of record. Thus, the ALJ did not commit reversible error.

## 2. Evaluation of Plaintiff's Symptoms

Plaintiff next argues that the ALJ failed to follow the legal standard as stated in 20 C.F.R. § 404.1529 during his evaluation of Plaintiff's symptoms. Specifically, Plaintiff asserts that the ALJ misstated and misapplied the law in his use of the word "strong" rather than "substantiated." (Docket Entry 7 at 6-7.) As a result, Plaintiff claims that "[t]he ALJ erred by creating an improper and more difficult standard regarding evidentiary requirements and then imposing this standard on Mr. Bailey's evidence." (Docket Entry 7 at 7.) This argument is without merit.

The legal standard presented in 20 C.F.R. § 404.1529 states that "[i]n determining whether you are disabled, we consider all your symptoms, including pain, and the extent in which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). As previously stated, "[s]ubstantial evidence" is not defined in the regulations; however, precedence has established that "it may be

somewhat less than a preponderance." *Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (internal

citations and quotation marks omitted).

The ALJ's use of the language "strong" rather than "substantial" does not raise the

standard of review required for the ALJ to make his determination. In his findings surrounding

Plaintiff's musculoskeletal problems, the ALJ stated:

> The treatment notes document the claimant's complaints of neck pain . . . .
> [C]laimant underwent left shoulder surgery in March 2007 and cervical spine
> fusion in October 2007. Seven months after his cervical spine fusion in May
> 2008, the treatment notes show that the pain that he was having between the
> shoulder blades was gone and he had only two episodes of severe right sided neck
> pain which his treating physician Dr. Ranjan Roy concluded was more likely
> muscular in nature and should resolve with physical therapy exercises, as would
> his low back pain. A physical examination at that time showed . . . motor strength
> in his upper extremities was 5/5 . . . . In his follow-up appointment on June 3,
> 2008, the claimant reported no neck or shoulder pain and that his arm pain had
> resolved . . . . [C]laimant underwent left ulnar nerve transposition in March 2007
> . . . . Following the surgery, the claimant began physical therapy . . . . In a follow-
> up appointment in November 2007, a physical examination of the claimant's left
> elbow showed a full range of motion, and no hypersensitivity at the surgery site,
> but he continued to have numbness and tingling in the left hand. His treating
> physician, Dr. T. Adam Ginn recommended carpal tunnel release surgery which
> the claimant underwent in March 2008 . . . A physical examination in April 2008
> showed a well healed wound, minimal pillar tenderness, full range of motion of
> the fingers and thumb but some weakness of grip and diminished sensation to
> light touch.
>
> The medical records show that claimant had right knee arthroscopic surgery in
> December 2006, and by January 2007 he was doing well, walking without any
> ambulatory devices and participating in physical therapy for strengthening . . .
> [I]n May 2008 the claimant was referred to Dr. Comadoll for an evaluation of his
> left knee due to pain . . . . His treating physician restricted the claimant from any
> really strenuous activity for four weeks . . . . [D]r. Comadoll wrote "long term the
> claimant is going to have difficulty with a normal manual labor job that requires
> standing long periods, ambulating long distances, going up and down stairs,
> climbing ladders and doing deep knee bends. He would probably be okay for a sit
> down job though".

(Tr. 25-26.)

In his findings surrounding Plaintiff's respiratory symptoms, the ALJ stated:

The claimant's medical records show that he underwent at least five pulmonary function tests during the timeframe from November 2006 through November 2008 . . . . His spirometry test results from November 2006 were within normal limits . . . . [C]laimant had some difficulty exhaling for the complete duration of the testing suggesting concomitant obstructive problems. However, Dr. Patel also noted that the claimant's respiratory problems improve when he uses Albuterol… In November 2007 he was diagnosed with mild reactive airways diseases with chronic obstructive pulmonary disease . . . . [D]r. Patel indicates from a respiratory standpoint, the claimant was doing stable and doing relatively well . . . . [S]pirometry test results in November 2008 revealed a severe ventilator defect which was not clearly obstructive or restrictive . . . Dr. Patel's final diagnosis of the claimant came in March 2009 when he concluded that he had asthma with chronic obstructive pulmonary disease without mention of status asthmaticus or acute asthmaticus or acute exacerbation is important because the claimant seldom reported acute asthma attacks and he was never hospitalized on any occasion because of an asthma attack.

(Tr. 27-28.)    After evaluating the objective medical evidence, the ALJ minimized any concerns regarding Plaintiff's respiratory symptoms by "limit[ing] claimant to light work with no work around concentrated exposure to hazards such as moving machinery, unprotected heights or dust, fumes, or gases." (Tr. 28.)

As a result of the above findings, the ALJ's conclusion that Plaintiff is able to perform light work with limitations is substantiated by objective medical evidence. Furthermore, the ALJ's conclusions are consistent with medical evaluations of Plaintiff conducted by treating physicians and non-examining physicians. Therefore, the ALJ properly evaluated Plaintiff's symptoms in this case.

3.    **Disability Determinations of Another Governmental Agency**

Plaintiff claims that the ALJ failed to consider Plaintiff's determination of disability by the Physical Evaluation Board of the Department of the Army ("PEB"). (Docket Entry 7 at 14-15.) Plaintiff contends that the ALJ and PEB reviewed similar information in which the PEB classified Plaintiff as "disabled" and the ALJ concluded otherwise. (Docket Entry 7 at 15.) "While the ALJ accepted many of the same areas of impairment as did the PEB, he did not find

-12-

that these impairments, singly or in combination, resulted in a finding of disability." *Id*. Defendant argues that "[b]ecause [PEB] finding[s] is fully consistent with the ALJ's own finding that Plaintiff could not perform his past relevant work, there was no need for the ALJ to "reject" it." (Docket Entry 12 at 14.) (Citations omitted.)

Regulations governing Social Security law state that "a disability determination made by another governmental agency that [a claimant is] disabled or blind is not binding on us." 20 C.F.R. § 404.1504. However, all evidence must be considered; therefore, disability decisions from other governmental agencies may not be disregarded. *Id*. Explanation of the consideration given to disability determinations of other governmental agencies should be noted in the case record. *See* SSR 06-3p. The Fourth Circuit and sister circuits have established some degree of weight to be given to a VA's disability determination. *See DeLoatche v. Heckler,* 715 F. 2d 148, 150 n.1 (4th Cir. 1983) (treating physicians' opinions given "great weight"); *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (VA decision given "great weight"); *Kane v. Heckler,* 776 F.2d 1130, 1135 (3d Cir. 1985) (VA rating given "substantial weight").

Before addressing the substantive issue here, it is important to note that, as Plaintiff states, the PEB is not the VA. The PEB is a division of the Department of the United States Army that determines "whether a Soldier is unfit because of physical disability to reasonably perform the duties of his or her office, grade, rank, or rating".[8] As a separate entity, the ALJ was not required to consider the determinations of the PEB as though they were the determinations of the VA. Nevertheless, the PEB is an entity of a governmental agency, and should be assessed by the provisions set forth in 20 C.F.R. §§ 404.1504 and 416.904. *See also* SSR 06-03p.

---

[8] U.S. Dep't of Army, Reg. 635-40, Physical Evaluation for Retention, Retirement, or Separation para 1-1 (8 Feb. 2006) (regulation further notes that the VA and PEB are "separate and distinct" entities).

A review of the evidence indicates that the ALJ's failure to explicitly state in his findings the consideration given to the PEB is, at most, harmless error. On July 13, 2009, the PEB concluded that Plaintiff was unable to perform the duties within his primary specialty and was, therefore, disabled. (Tr. 848-849.) The ALJ's finding that Plaintiff could not perform past relevant jobs is consistent with the PEB's findings. (Tr. 29.) Even considering substantially similar information as the PEB, the ALJ was not required to make the same determination that Plaintiff was 100% disabled according to standards under social security law. Rather than ignoring the PEB determinations, the ALJ's finding of Plaintiff's impairments further supports consistencies between the agencies.

For example, the PEB recorded a 30% disability rating for Plaintiff's anxiety disorder based upon deployments which lead to Plaintiff's "decreased concentrating ability . . . social withdrawal and loss of interest in family." (Tr. 848.) The ALJ also addressed Plaintiff's anxiety disorder by limiting Plaintiff to "work performed in a non-productive environment with limited interpersonal demands." (Tr. 28.) The PEB recorded a 20% disability rating for bilateral knee pain and a 30% disability rating for neuritis of upper radicular groups. (Tr. 848.) In his findings, the ALJ limited Plaintiff's frequent movement of left lower and upper extremities, and limited Plaintiff to "no more than occasional climbing, balancing, crouching, stooping, kneeling, and crawling." (Tr. 27.) With regard to Plaintiff's obstructive lung disease, the PEB concluded that "[t]his condition is unfitting as the Soldier is unable to perform the APFT, perform his MOS, wear a protective mask, or perform the functional duties of soldier." (Tr. 848.) Likewise, the ALJ found that Plaintiff is limited to "light work with no work around concentrated exposure to hazards such as moving machinery, unprotected heights or dust, fumes, or gases." (Tr. 28.)

The ALJ considered substantially similar evidence as the PEB in making his determination of Plaintiff's disability status.  The PEB's findings of impairments are consistent with the ALJ's findings.  Thus, the ALJ's failure to provide direct reference to the consideration given to the PEB is nothing more than harmless error.  Any notation of record by the ALJ would have, at most, confirmed the consistencies with the PEB's findings and further supported the ALJ's conclusion based upon substantial evidence.  Therefore, Plaintiff's argument fails.

## 4.    Plaintiff's Obstructive Sleep Apnea and Obesity

### A.  Obstructive Sleep Apnea

Plaintiff argues that the ALJ failed to classify his obstructive sleep apnea and obesity as severe impairments (*See* Docket Entry 7 at 16-18.)  Specifically, Plaintiff argues that "the ALJ erred in stating that Mr. Bailey's obstructive sleep apnea was controlled and imposed only a minimal limitation on his ability to perform basic work functions." (*Id*. at 17.)  To support this assertion, Plaintiff points to the ALJ's reference of treatment notes, records from Rowan Diagnostic Clinic and treatment notes from Lyerly Counseling Services.  (*See id*. (citing Tr. 477); Tr. 483, 484, 480, 799, 511, 512, 816, 819, 820, 824, 833.)  Defendant argues that the ALJ properly concluded that Plaintiff's impairments or combination of impairments did not equal a listed impairment.  (Docket Entry 12 at 3.)

Step two of the SEP requires the ALJ to determine if the claimant has any severe medically determinable impairments.   20 C.F.R. §§ 404.1520(a)(4)(iii) & 416.920(a)(4)(iii).  Social Security regulations indicate that a severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id*. § 404.1520(c).  "An impairment or combination of impairments is not severe if it does not significantly limit your

physical or mental ability to do basic work activities." *Id*. § 404.1521(a). Examples of basic work activities include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

*Id*. § 404.1521(b). The claimant has the burden of providing objective medical evidence and other evidence to determine claimant's medical impairments. *Id*. §404.1512(a); *see also Harris*, 658 F.2d at 264.

Based upon substantial evidence in the record, the ALJ properly concluded that Plaintiff's sleep apnea was not a severe impairment. The ALJ found that "the claimant's obstructive sleep apnea is controlled and does not impose more than minimal limitation on his ability to perform basic work functions." (Tr. 22.) Plaintiff first complained of sleep concerns after returning from Iraq. (Tr. 612.) Plaintiff underwent a sleep study and began using a Continuous Positive Airway Pressure (CPAP) machine. *Id*. On July 2, 2008, a treatment note indicates that Plaintiff has difficulty using the machine and that he is "still not rested at night," but it also indicates that Plaintiff has "poor compliance with the CPAP." (Tr. 480.) On October 1, 2008, a treatment note indicates that Plaintiff reported that the machine is "working fairly well, but he is unable to use the CPAP during anxiety attacks. (Tr. 477.) On January 1, 2009, Plaintiff reported that "he uses the CPAP as much as he can . . . [H]e has bad dreams and pulls

the mask off in the middle of the night . . . [H]e has started counseling and Paxil dosage has increased." (Tr. 799.)  The treatment note also indicates that Plaintiff "feels a little more rested." *Id*.

To support his argument, Plaintiff points to treatment notes from Lyerly Counseling Services documenting continued sleep concerns and use of the CPAP machine.  (Docket Entry 7 at 17.)  Several of the notes document concerns of sleep as a result of nightmares; however, some notes also document sleep improvements.  On October 9, 2008, a treatment note indicates that Plaintiff was "sleeping better but waking during the night." (Tr. 511.)  Furthermore, most of the treatment notes referenced by Plaintiff (Tr. 511, 512, 816, 820) were from counseling sessions prior to the treatment note on January 1, 2009.  In sum, Plaintiff's sleep concerns seemed to have improved over time, notwithstanding nightmares in which at least one instance Plaintiff credits to watching the movie "*Friday [the] 13th*." (Tr. 834.)  The ALJ considered all the evidence of record, indicating that "certain life stressors adversely affected the claimant's progress causing some anxiety and some effect on sleeping." (Tr. 21.)  Thus, the ALJ's finding that Plaintiff's sleep apnea does not totally preclude Plaintiff from work is appropriate.

### B.  Obesity

Plaintiff's motion for summary judgment also points out the ALJ's failure to acknowledge whether Plaintiff's obesity, standing alone, is a severe impairment or whether he considered it in combination with Plaintiff's sleep apnea as a listed impairment.  (Docket Entry 7 at 16-18.) Plaintiff contends that the ALJ disregarded "well-documented" evidence of Plaintiff's obesity and that "[t]he evidence shows clearly that Mr. Bailey, which the ALJ has noted, suffers from severe respiratory impairments and several musculoskeletal conditions, all of which can be impacted and compounded by obesity." (*Id*. at 18.)  The foregoing considerations establish that

although the ALJ did not explicitly state in his findings the consideration given to Plaintiff's obesity, it was nevertheless implicitly adopted through recognition of examining and non-examining physicians' opinions. Thus, the Court disagrees with Plaintiff on this issue.

The evaluation process requires the ALJ to evaluate the claimant's impairments individually and in combination when assessing whether a claimant is disabled. 20 C.F.R. § 404.1523; *see also Walker v. Bowen*, 889 F.2d 47, 49-50 (4th Cir. 1989). As previously noted in this recommendation, if an impairment minimally affects claimant's work abilities, it will not be considered a "severe" impairment. 20 C.F.R. § 404.1520(c). Social Security Ruling 02-1p further explains how the ALJ is to consider obesity at several stages of the SEP process.[9] The ALJ must assess this issue and "explain how [the ALJ] reached [] conclusions on whether obesity caused any physical or mental limitations." 67 Fed. Reg. 57859, 57863.

Plaintiff is correct in asserting that his obesity is well documented in the evidence of record. In September 2006, Plaintiff weighed 211 pounds at 68 inches (Tr. 400.) On March 6, 2008, Dr. Patel noted that Plaintiff had gained approximately 85 pounds after returning from Iraq. (Tr. 483.) During a sleep study conducted on May 4, 2008, Dr. Smalls-Stokes noted that Plaintiff was "obese" and that "weight loss is to be important for his overall care." (Tr. 495.) In October 2008, Plaintiff weighed 272 pounds, which indicates a BMI of 41.4.[10] (Tr. 400.) Dr.

---

[9] In determining claimant's residual functional capacity, the Fourth Circuit "requires a combined analysis of all physical and mental impairments as well as an assessment of vocational factors." *Reichenbach v. Heckler*, 808 F.2d 309, 312 (4th Cir. 1985). At step two of SEP, SSR 02-1P indicates that obesity will be deemed a severe impairment when, standing alone or in conjunction with other impairments, "significantly limits an individual's physical or mental ability to do basic work activities. Obesity will meet the requirements of a listing at step three of SEP if the obesity combined with another impairment such as "musculoskeletal, respiratory, and cardiovascular impairments" meet the listing requirements. *See* SSR 02-1P.

[10] SSR 02-1p indicates that BMIs of 40 or greater constitute Level III, or "extreme" obesity. "Obesity is a risk factor that increases an individual's chance of developing impairments in most body systems . . . The fact that obesity is a risk factor for other impairments does not mean that individuals with obesity have any of these impairments." *Id.*

Nickerson further noted Plaintiff's obesity on several different office visits. (Tr. 379-381, 384, 385, 389-391.)

Contrary to Plaintiff's argument, the well-documented evidence of Plaintiff's obesity does not require the ALJ to make direct statements about this issue in his findings. This Court and other district courts have held that an ALJ's failure to explicitly discuss obesity is insufficient grounds to remand a case for a rehearing. *See Ross v. Astrue,* No. 1:05CV968, 2008 WL 205213, at *2 (M.D.N.C. Jan. 23, 2008); *see also Prochaska v. Barnhart*, 454 F.3d 731, 736-37 (7th Cir. 2006); *Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005). A prior decision in this Court indicates that "[T]here is no showing the ALJ engaged in such an individualized assessment, but the Ruling contains no requirement that such an exercise be set out in the decision." *Ross*, 2008 WL 205213, at *2. Implicit consideration of claimant's condition is sufficient "through the [ALJ's] review and discussion of [claimant's] doctor's reports." *Prochaska,* 454 F.3d at 737.

After reviewing the ALJ's findings, this Court concludes that the ALJ considered Plaintiff's obesity implicitly by giving weight to treating sources and non-examining physicians who observed and noted Plaintiff's obesity. The reports of physicians referenced Plaintiff's obesity, but none of them explained or acknowledged any functional limitations as a result of Plaintiff's weight. The ALJ discussed the medical records of pulmonary specialist Dr. Patel. (Tr. 21, 27-28.) In treating Plaintiff's obstructive lung disease, Dr. Patel said that Plaintiff was a "well-appearing gentleman in no acute distress" (Tr. 476) and "[h]is weight is 269 pounds and stable." (Tr. 477.) The ALJ reviewed the notes of Plaintiff's primary care physician. (Tr. 21.) Dr. Nickerson said that Plaintiff's increased Xanax dosage was "very helpful" and Plaintiff "sleeps better." (Tr. 388.)

The ALJ also considered treating physician Dr. Comodall. (Tr. 26.) He stated that "Plaintiff has lost 18 pounds in two weeks." (Tr. 810.) Consideration was given to Plaintiff's military physician, Dr. Christopher Jones (Tr. 29.), who reported that Plaintiff could lift 20 pounds with left arm and 30 pounds with right arm. (Tr. 218.) Dr. Jessup and Dr. Kumar, two non-examining physicians also were given consideration in the ALJ's findings. (Tr. 29.) Both experts concluded that Plaintiff could perform work with some restrictions. (*See* Tr. 755-762, 789-796.)

Plaintiff's weight was noted in several medical documents which the ALJ referenced in his findings. (See, e.g., Tr. 474 (Ex. 4F, weight at 266); Tr. 379 (Ex. 2F, weight is 272); Tr. 380 (Ex. 2F, weight is 272); Tr. 384 (Ex. 2F, weight at 252.5); Tr. 762 (Ex. 13F, weight 265); Tr. 796 (Ex. 17F, weight at 265.) All of these reports throughout Plaintiff's medical records recognize Plaintiff's obesity or weight, but no report expressed concerns of great limitations as a result of Plaintiff's weight issue. Certainly Plaintiff's treating physicians would have further addressed the issue of obesity if they believed it to cause significant limitations for Plaintiff. After reviewing the findings in this case, the Court concludes that the ALJ, relying upon the evidence, implicitly considered Plaintiff's obesity and properly concluded that it was not a severe impairment.

**5.     Opinions of Non-Examining Physicians**

As to the final argument, Plaintiff claims that the ALJ erred in considering the opinions of non-examining physicians, Dr. Pamela Jessup and Dr. Sankar Kumar, in the ALJ's calculations of impairment severity and Plaintiff's residual functioning capacity assessment. (Docket Entry 7 at 18-20.) Plaintiff states that "While it is unclear what records the physicians reviewed, it is undeniable that neither had access to all the medical records in the record and thus

formed opinions without all the relevant information." (Docket Entry 7 at 19.) Defendant contends that reliance on these expert opinions was proper, and "newer evidence not seen by these experts did not show any permanent or prolonged deterioration in Plaintiff's condition." (Docket Entry 12 at 8.)

First, the Court recognizes that the ALJ could consider the opinions of the non-examining physicians. The Fourth Circuit has held that opinions of non-examining physicians may be relied upon when they are supported by objective medical evidence and are consistent with other medical opinions of record. *See Johnson v. Barnhart*, 434 F. 3d 650, 657 (4th Cir. 2005). An opinion is given weight based upon the supportability and consistency of the opinion as it relates to the record as a whole. SSR 96-6p.

Here, the ALJ considered opinions of Dr. Jessup dated July 12, 2008 (Tr. 755-762) and Dr. Kumar dated February 6, 2009. (Tr. 789-796.) Both non-examining physicians considered all available evidence present at the time of the physical residual functional capacity assessment. Dr. Jessup noted that Plaintiff had recorded health problems and concluded that Plaintiff "retains the capacity to perform light work with restrictions on [limited upper extremities] for push/pull/reaching/handling/finger as well as [limited lower extremities] for climbing, push/pull." (Tr. 761.) Dr. Kumar indicated similar work restrictions, suggesting "frequent, but not continuous [limited upper extremities] & [limited lower extremities]" and non-continuous "overhead reaching bilaterally." (Tr. 790, 792.) Evidence provided after these opinions by non-examining physicians contradicts neither of the opinions made nor evidence of the record itself. In his treatment notes dated March 31, 2009, Dr. Comadoll, an examining physician, indicates that Plaintiff's bilateral knee injection has helped Plaintiff as well as Plaintiff's weight loss of 18 pounds. (Tr. 810.) Treatment notes on April 14, 2009, indicate that Plaintiff had injections in

both knees for continued knee pain and that Plaintiff would return for future knee injections. (Tr. 811.) There is no indication that Plaintiff's conditions have worsened or that the knee injections did not help Plaintiff.

The opinions of the two non-examining physicians are additionally supported by treatment notes of examining physicians. Dr. Christopher Jones, a treating physician,[11] indicates in Plaintiff's physical profile that Plaintiff is limited to prolonged standing, limited to lifting a maximum weight of twenty pounds with the left arm and thirty pounds with the right arm, and no walking for more than thirty minutes. (Tr. 218.) These restrictions recognize Plaintiff's limitations just as the opinions of the non-examining experts recognized them based upon the assessment of medical impairments and Plaintiff's symptoms. The Fourth Circuit has ruled that "the testimony of a non-examining physician can be relied upon when it is consistent with the record." *Smith v. Schweiker*, 795 F. 2d 343, 346 (4th Cir. 1986) (citing *Kyle v. Cohen*, 449 F.2d 489, 492 (4th Cir. 1971)). As indicated above, the opinions of the non-examining physicians are consistent with the record and are further supported by treatment notes of examining physicians. In sum, the ALJ's reliance upon the non-examining physicians' reports is appropriate and the opinions of the non-examining physicians are consistent with the record as a whole. Thus, the Court concludes that Plaintiff's argument is without merit.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be **AFFIRMED**. To this extent, Plaintiff's motion for summary judgment (Docket Entry 6) should be **DENIED**, Defendant's motion for judgment on the pleadings (Docket Entry 11) should be **GRANTED**, and this action be **DISMISSED** with prejudice.

---

[11] Plaintiff questions whether Dr. Jones is a treating physician (Docket Entry 7 at 19); it is clear that Dr. Jones is a treating physician, that the medical document was electronically signed (Tr. 218), and that its intended purpose relates to functional limitations to perform military duties as set by standards of medical fitness. *See also* U.S. Dep't of Army, Reg. 40-501, Standards of Medical Fitness para 7-1 (14 Dec. 2008).

_United States Magistrate Judge_

Durham, North Carolina
January 10th, 2013